Filed 11/18/14  P. v. Cabello CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D064617 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD243965) |
| RODOLFO CABELLO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

Michael Clough, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette and Julie L. Garland, Assistant Attorneys General, Charles C. Ragland and Kimberley A. Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

Rodolfo Cabello appeals from a judgment convicting him of assault with a deadly weapon.  He argues the record does not support the jury's finding that the prosecution

carried its burden to show he was not acting in self-defense. We reject this contention and affirm.

## FACTUAL AND PROCEDURAL ARGUMENT

The charged assault occurred at about 1:00 a.m. on October 13, 2012, outside a bar near where defendant had been drinking. As we detail below, the prosecution's evidence showed that defendant instigated a fight outside the bar and, during the course of the ensuing events, ultimately stabbed an off-duty bouncer (Victor Monts) who worked at the bar. The prosecution witnesses included victim Monts and two other bouncers (Nathan Fowler and Brian Mathews) who worked at the bars in the area.

On the night of the assault, Monts, a bouncer at the Cheswick's bar (Cheswick's), was not working and was planning to meet a friend at the bar. Three doors away from Cheswick's, defendant was at another bar, the Sunshine Company (Sunshine), drinking with his girlfriend (Vanessa Cuevas) and two friends (Noe Guerrero and Manuel Nazzal). Monts had gone briefly into the Sunshine bar, and as he was preparing to leave to go to Cheswick's, he noticed defendant being escorted out of the bar because of an altercation near a pool table. Defendant appeared to be "more wound up than everyone else in the crowd" and he was fighting with the Sunshine bar bouncers about leaving.

Defendant then started a fight outside Cheswick's, apparently with a man who had been involved in the altercation inside the Sunshine bar. When this second fight broke out, Fowler was in front of the Sunshine bar; Mathews was at Cheswick's front door; and Monts was inside Cheswick's. Fowler saw defendant outside the Sunshine bar with Cuevas and Guerrero, and he noticed that defendant appeared to be "kind of pumped" as

2

if he was "ready to start something."[1] Mathews saw two groups of people (one which included defendant) walking from the direction of the Sunshine bar and arguing and yelling at each other. Defendant appeared "heated"; the argument escalated; and a fight erupted in front of Cheswick's. Fowler testified that defendant was the instigator of the fight, stating that defendant ran after the man and hit him with his fist. At first just defendant and the man were fighting and other people were trying to break it up, but then it turned into a "free-for-all" with "several random fights." Mathews likewise saw people, including defendant, "just start[] swinging, throwing punches and pushing each other."

Monts looked outside Cheswick's window and saw a man who, based on his ripped shirt and bleeding face, looked like he had just been in a fight. A group of women were with him and were trying to make sure he was alright. Defendant walked up to the man and "just sucker-punched him"; the man "never saw it coming"; the man and the women were yelling " 'stop' "; and the man was not fighting back. A crowd of about 30 people had formed around the man and defendant; no one was coming to the man's assistance; and defendant was the only one fighting. Monts assessed that the man did not want to fight anymore and that he was getting "beaten up," so Monts went outside, got in between defendant and the man, pushed them apart, and told them to go home.

After Monts separated defendant and the man, defendant was "mouthing off a little bit" and "kept wanting to come back," but Monts "stood in the way." Monts observed

---

[1]     Defendant's other friend Nazzal was not present at this point because he had gone to Guerrero's truck to sleep.

that defendant had slurred speech and bloodshot eyes and appeared to be drunk. Mathews, viewing them from a distance, saw that Monts and defendant were arguing and that defendant appeared angry and "hotheaded." Monts, with Mathews's assistance, succeeded in separating the two groups, and the man whom defendant had attacked left the area.

While the fight between defendant and the man was occurring, four people (two males and two females) were trying to leave Cheswick's on their motorcycles parked in front of the bar. However, as the crowd surrounding the fight backed up, the fight "spilled over on top of" the bikers, causing them to get pushed and almost knocked over. People started "mouthing off" and Monts tried to get everyone to leave.

To Monts, it appeared that defendant wanted to continue fighting. Defendant was "[w]alking around with a ripped shirt covered in blood, and he wouldn't stop mouthing off to people," saying things like, " 'F-bomb this' "; " 'I don't want to talk to you. I want to talk to him.' " Defendant's girlfriend (Cuevas) was also angry; she and a female biker were yelling at each other, and Cuevas pushed the female biker. Monts kept telling them that they needed to leave.

Defendant, who had initially walked away, returned to the area, apparently because Cuevas was not coming with him but was continuing to argue and yell. Defendant told Monts he wanted to apologize to the bikers and acted as if he wanted to shake a male biker's hand. However, defendant had one of his hands in his pocket; the manner of his approach did not seem apologetic; and Monts could hear the bikers behind him saying they did not want his apology. Monts got in between defendant and the

4

bikers and would not let defendant get near them, telling defendant he did not need to apologize, the bikers did not want to talk to him, and the bikers were leaving and he should do the same. One of the male bikers was able to calm the female biker who had been arguing with Cuevas, and the four bikers rode away on their motorcycles and left the area. The bikers did not display any weapons and did not have physical contact with anyone. Defendant also went back into the crowd.

Shortly after this, defendant again returned to the area of the bar; it appeared to Mathews that he was still trying to get Cuevas to leave. Monts told defendant, " 'Hey, man, there's a lot of people here who aren't your best friend. They all saw a fight where you were just beating up a guy. You should go home. Please go home. You're drunk.' " Defendant looked angry and Monts had a feeling defendant might "put his hands" on him. Monts told defendant not to come near him; put his arm out in front with his palm "flat-out" to create space between defendant and himself; and said, " 'For the last time, get off our property.' " Mathews was pulling Monts by the back of his t-shirt to separate him from the crowd, and Monts was moving backwards away from defendant.

Mathews noticed that defendant appeared angry, and he saw him come out of the crowd, "crouching a little bit" with a knife "kind of tucked behind his leg" as if he was trying to hide the knife from Monts. No one in the crowd was trying to prevent defendant from moving towards Monts, and as defendant emerged from the crowd there was no one between Monts and defendant and the crowd was about 10 feet away from defendant. Monts looked over his shoulder to see where Mathews was, and as he was turning back,

5

defendant walked up to him and stabbed him in his abdomen. Monts had not noticed that defendant had a knife.

Monts and Mathews testified that when defendant pulled out the knife, no one in the crowd was attacking him, displaying weapons, or making threats. According to Monts, after the fight outside Cheswick's between defendant and the man from the pool table altercation, there was yelling and some pushing and shoving but no more dangerous physical altercations. Monts and Mathews observed some injuries on defendant, but Monts did not think they were serious, and Mathews assumed defendant got them when he was fighting earlier in front of Cheswick's.[2] Monts, Mathews, and Fowler all testified that Monts did not have a weapon and did not engage in any physical aggression or threaten defendant.

After stabbing Monts, defendant started running away and a group of people started chasing him, including Fowler. At one point defendant and Guerrero pulled out shovels from a truck. Defendant was holding one of the shovels and the knife; he appeared angry and ready to fight; and as people were yelling at him he was saying things like " '[C]ome get it' " and " 'Come on. Let's go. Let's do this.' " Defendant continued running away until the police arrived and arrested him. The arresting officer observed

---

2      Mathews acknowledged that he lost sight of defendant for a few seconds when defendant disappeared into the crowd and before he returned and committed the stabbing. Fowler at one point testified that defendant was not being physically attacked when he pulled out the knife, but at another point testified defendant was in the middle of the crowd fighting when he pulled out the knife; he flailed it around in a stabbing motion as if trying to keep people away from him; and he then purposely stabbed Monts who was right next to him and trying to push people apart and break up the fight.

that defendant had a one-inch laceration on his forehead, and defendant was transported to the hospital.

The knife attack injured Monts's small intestine which had to be partially removed. Monts underwent surgery, had 32 staples up and down his stomach, and was in the hospital for five days.

*Defense*

Defendant's girlfriend Cuevas and his friend Nazzal testified on behalf of the defense. Nazzal originally was with defendant and the others at the Sunshine bar, but then left to sleep in Guerrero's truck because he was drunk. Cuevas testified that while in the Sunshine bar, defendant got into a fight with a man who insulted them; the Sunshine bar bouncers told defendant, Cuevas and Guerrero to leave; and while defendant was being escorted out of the bar, the bouncers tackled him to the floor. Outside the bar, defendant tried to fight the man he had argued with inside the Sunshine bar, but bouncers from another bar intervened and the man left. As Cuevas was walking back towards the Sunshine bar, a female biker was yelling racial comments about defendant, saying, " 'Look at that stupid Mexican trying to start shit.' " Cuevas and the woman started yelling at each other, and another female biker hit Cuevas on the side of her head. Cuevas tried to swing back at her until Guerrero came between them and told them to back off.

When defendant walked back to where Cuevas and Guerrero were, one of the female bikers said to him, " 'you sucker-punched him,' " and defendant responded, " 'you don't even know what happened.' " A male biker said to defendant " 'you better not touch her . . . you better back off.' " Defendant said, " 'No, everything's cool. I'm not trying to

7

start any more problems with you guys. I'm just letting her know that she didn't see what happened.' " The male biker got off his motorcycle and approached defendant. Defendant was trying to calm Cuevas because she was still upset, and he told her to walk with Guerrero and wait by the Sunshine bar.

Guerrero, sounding scared, called Nazzal on the phone to come help because they were afraid the people in the crowd were going to attack them. When Nazzal arrived, he saw Monts pushing Cuevas. Cuevas testified that Monts appeared angry and he was pushing her with his chest, saying she should "get the fuck out of here" and that she "started this." Guerrero and Nazzal told Monts to stop pushing her. Monts, who appeared drunk, shoved Nazzal, put his fists up, and said " 'Get your bitch out of here.' "

A fight then broke out. A man tried to choke Nazzal until Guerrero intervened by hitting the man. A man pushed Cuevas to the ground; when she got up, the man threw her shoes at her (she had earlier taken them off); and she was being pushed and hit by a lot of males. Defendant came and hit the man who pushed Cuevas, and defendant fell to the ground. Cuevas saw a lot of people kicking and hitting, and when she caught sight of defendant, his face was "drenched in blood"; he appeared dazed and was stumbling; and she feared for his life.

According to Cuevas, defendant was backing away, but people (including Monts) were still coming at him as if to hit him. Appearing frightened, defendant started swinging his arm as if he was trying to punch them. Nazzal similarly testified that defendant was falling backwards and bleeding profusely, and defendant, appearing scared, was looking around at everyone and moving his arms. Cuevas and Guerrero did

8

not see anyone with weapons, and did not see that defendant had a knife. Cuevas acknowledged that most of the people in the crowd were "watching, [and] not necessarily involved in physical fighting." All of a sudden everyone stopped fighting and Guerrero yelled that they should run. Defendant and Guerrero ran in one direction, and Cuevas and Nazzal ran in another. People in the crowd ran after Cuevas and Nazzal, continued to attack them, and yelled racially-derisive comments.

Cuevas and Nazzal testified about the various injuries they and defendant incurred from the altercation. Defendant suffered a forehead injury that required stitches; swelling and bruising in his facial area; a lip injury; and scratches and/or bruising on his chest and shoulder area. Cuevas had bruising around her eye and on her arm and a scratch by her jaw. Nazzal suffered an injury near his nose and a chipped tooth.

*Jury Verdict and Sentence*

Defendant was charged with assault with a deadly weapon, with enhancements for personal use of a deadly weapon and personal infliction of great bodily injury. The jury convicted him as charged. The court sentenced him to prison for five years, consisting of two years for the assault charge and three years for the great bodily injury enhancement.

DISCUSSION

Challenging the sufficiency of the evidence to support the jury's verdict, defendant argues the prosecution did not carry its burden to prove beyond a reasonable doubt that he was not acting in self-defense.

If the evidence raises a reasonable doubt that the defendant acted in self-defense, the prosecution has the burden to show the nonexistence of self-defense beyond a

9

reasonable doubt.  (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 570-571.)  To support a claim of self-defense, the defendant must reasonably believe there is a threat of imminent bodily injury and the immediate use of deadly force is necessary, and must use an amount of force that is reasonable under the circumstances.  (*People v. Hernandez* (2011) 51 Cal.4th 733, 747; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1093-1095 (conc. opn. of Brown, J.).)  The doctrine of self-defense may not be invoked by a defendant who initiated a physical assault or engaged in mutual combat, unless the defendant communicated that he or she had abandoned the assault.  (*People v. Jackson* (2014) 58 Cal.4th 724, 760-761; *People v. Nem* (2003) 114 Cal.App.4th 160, 164-165; see CALCRIM No. 3471.)  Similarly, under the doctrine of contrived self-defense, self-defense is not available to a defendant who seeks out a fight with the intent to create the need to respond with deadly force.  (*People v. Hecker* (1895) 109 Cal. 451, 462; see CALCRIM No. 3472.)

In reviewing a challenge to the sufficiency of the evidence, we examine the entire record in the light most favorable to the judgment to determine whether there is substantial evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Nelson* (2011) 51 Cal.4th 198, 210.)  It is the exclusive province of the jury to determine credibility and to resolve evidentiary conflicts and inconsistencies, and we presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence.  (*Ibid.*; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)  If the circumstances reasonably justify the jury's findings,

reversal is not warranted merely because the circumstances might also be reasonably reconciled with a contrary finding. (*Nelson, supra*, at p. 210.)

Here, the prosecution witnesses described a scenario in which defendant was involved in two altercations (inside the Sunshine bar and in front of Cheswick's); Monts broke up the fight in front of Cheswick's; defendant appeared angry and drunk and continued to display signs of aggression; defendant's girlfriend got into an altercation with a female biker; Monts was continually telling everyone to leave, including defendant; and defendant returned to the scene with a knife and stabbed Monts as Monts again ordered defendant to leave the area. Prosecution witnesses testified that Monts never aggressed towards defendant or threatened him, and that no one in the crowd was attacking or threatening defendant when he stabbed Monts. Monts never saw the knife, and a prosecution witness described how defendant was in a slightly crouched position with his knife behind his leg as he approached Monts. From this evidence, the jury could reasonably find that defendant did not believe he was in danger from the crowd or Monts when he stabbed Monts, and he stabbed Monts because he was in a drunken and violent state of mind and was angry at Monts for continually interfering in his altercations that night.

To support his challenge to the jury's verdict, defendant makes a variety of evidentiary claims, including that he left the scene multiple times and only returned to try to get Cuevas to leave; when he approached the bikers he was trying to stop further fighting; people in the crowd were hostile against him; they assaulted Cuevas and him and Cuevas feared for his life when she saw his injuries and disoriented demeanor; he

11

had a right to defend himself and Cuevas from the attackers in the crowd; he pulled out the knife to keep people away from him; and he reasonably feared for his life even if no one was assaulting him at the exact moment before he stabbed Monts.

These claims present factual evidence and inferences that *could* support a conclusion that the prosecution did not disprove self-defense, but as set forth above, the record also supports the contrary conclusion. The jury was properly instructed on self-defense and the various circumstances when it is unavailable as a defense. When deciding how to apply these instructions to the evidence in this case, the jury was required to sort through the witnesses' differing descriptions of what occurred, including prosecution witnesses who described Monts as merely trying to send everyone home, an angry and drunken defendant who kept wanting to fight, and a crowd that posed no imminent threat to defendant, versus defense witnesses who described Monts as acting in an aggressive manner and a crowd that attacked defendant and his companions. It was the jury's role to consider the conflicting claims and decide what testimony to credit and what inferences to draw, and it was not required to construe the evidence as showing defendant was no longer instigating the altercations and was acting in self-defense when he stabbed Monts. Rather, the jury could reasonably find that defendant was an instigator of the physical confrontations throughout the entire incident, when he stabbed Monts he had no reasonable basis to believe he or his companions were in danger, and/or he had started the combative series of events and never communicated an intent to withdraw. On appeal, it is not our role to second-guess the jury's conclusions that are supported by the record.

12

Defendant's challenge to the jury's verdict fails.

## DISPOSITION

The judgment is affirmed.



HALLER, J.

WE CONCUR:


McCONNELL, P. J.


AARON, J.