Filed 9/4/20  P. v. Lopez CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JORGE ALBERTO LOPEZ,<br><br>　　　Defendant and Appellant. | B297550<br><br>(Los Angeles County<br>Super. Ct. No. BA455902) |

　　　APPEAL from a judgment of the Superior Court of Los Angeles County.  Mark S. Arnold, Judge.  Affirmed.

　　　Karyn H. Bucur, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, David E. Madeo and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Jorge Alberto Lopez attacked his cousin with a machete, and following a jury trial was convicted of assault with a deadly weapon with a true finding on the great bodily injury allegation.[1]  (Pen. Code, §§ 245, subd. (a)(1), 12022.7, subd. (a); count 2.) ~(1CT 175, 184-185, 196)~ The trial court sentenced appellant to a term of seven years in state prison.~(1CT 193-194, 196)~

Appellant contends the trial court prejudicially abused its discretion by admitting evidence of a prior act of vandalism to prove appellant's motive and to refute his claim of self-defense. We disagree and affirm the judgment of conviction.

## FACTUAL BACKGROUND

On March 28, 2017, Gil Garcia was living in a house with his wife and children, his mother Maria, and his brother James. ~(2RT 34, 37, 90)~ Gil and appellant are cousins~(2RT 47-48, 133)~, and when he was about 14 years old, Gil lived with appellant's family in El Salvador for about a year. ~(2RT 92, 123, 133)~ During that time, Gil developed a good relationship with appellant's father, and when appellant moved to the United States, appellant's father asked Gil to take appellant in. ~(2RT 93, 119-120, 149)~ About two or three weeks after appellant moved in with Gil and his family, appellant's father died in a car accident in El Salvador.~(2RT 93, 119-120, 166, 171, 252)~

Appellant lived with the Garcias for about two years, until early 2017. ~(2RT 92, 120)~ In addition to giving appellant a

---

[1] The jury was unable to reach a verdict on count 1, attempted willful, deliberate, and premeditated murder (Pen. Code, §§ 664/187, subd. (a)), and the trial court declared a mistrial as to that count.~(1CT 185)~

place to live, Gil hired him to work at his hardwood floor company, but appellant was not a good worker and caused a lot of problems.~(2RT 123-125)~

Appellant also caused problems living with the Garcias, and in January or February 2017, Gil finally tried to get appellant to move out because he was becoming increasingly violent. ~(2RT 48, 60, 121, 125-127, 128-129)~ On one occasion, appellant told Gil he was not leaving and attacked Gil with a piece of wood. ~(2RT 126-127, 159)~ Ultimately, the family called the police to get appellant out. ~(2RT 35, 129)~ But even after he had left, appellant would return to the house and sleep in the garage without the family's permission.~(2RT 135-136)~

One evening in February 2017, appellant went to Gil's house and smashed the rear and driver's side windows of Gil's work vehicle while yelling he was going to kill Gil. ~(2RT 46, 59-60, 159-160)~ Then on March 27, 2017, around 11:00 a.m., appellant broke some windows at the Garcia house. ~(2RT 62, 138, 160-161)~ Appellant later told police that on the same day he had broken into Gil's vehicle and taken a machete.~(1CT 121, 125; 3RT 340-341)~

On March 28, 2017, around 6:00 a.m., Maria was making coffee in the kitchen when appellant started banging on the kitchen door. ~(2RT 35, 50-52, 262)~ Appellant was carrying a three-foot long machete and yelling that he was there to kill Gil. ~(2RT 35-36, 38, 69)~ Maria told appellant to get himself under control and ran to warn her son. ~(2RT 38)~ Then she called 911. ~(2RT 38-39)~

Gil got up and went out the front door to intercept appellant. ~(2RT 94)~ Seeing appellant running toward him with a machete in his hand "ready to attack,"~(2RT 96-98)~ Gil picked

3

up a gardening tool with a long wooden handle to defend himself. ~(2RT 96-97)~ Appellant told Gil, " 'I'm going to kill you,' " several times. ~(2RT 101)~ When appellant came close, Gil hit him once on the head with the handle of the gardening tool, but slipped on the steps and dropped the tool as he fell to the ground. ~(2RT 99-100)~ Making a "chopping" motion toward Gil and swinging the machete with great force, appellant struck Gil's forehead, legs, and hands with the machete. ~(2RT 72, 102-103; 3RT 303-307)~ As he continued his attack, appellant repeatedly said he was going to kill Gil. ~(2RT 73, 102, 104)~ James came outside and was eventually able to separate the two men. ~(2RT 73)~ Both had bleeding head wounds.~(2RT 40-41, 73)~

Appellant testified on his own behalf. He recounted an incident on September 18, 2016, in which Gil struck appellant on the arm with an iron bar and punched appellant in the face, resulting in a black eye and a permanent scar on his arm. ~(2RT 242-244; 3RT 313-314)~ Appellant testified that after that incident Gil frequently hit and kicked him.~(2RT 254)~

When Gil forced appellant to move out, appellant left without his belongings. ~(2RT 221)~ On March 28, 2017, appellant took the bus to Gil's house early in the morning on his way to work to retrieve his things. ~(2RT 222, 224, 261)~ He was hearing voices that morning, which made him desperate to get his property back. ~(2RT 225-226)~ The machete, which he needed for his job, was tucked into the waistband of his pants. ~(2RT 224-225)~ Appellant knocked on the kitchen door and asked Maria to have Gil give appellant his belongings. ~(2RT 228)~ He denied telling Maria he wanted to kill Gil.~(2RT 229)~

Appellant walked to the front of the house to wait for Gil. ~(2RT 229)~ The machete was still tucked into his waistband.

4

~(2RT 229-230)~ When Gil came outside, appellant asked him, " 'Then how are we going to fix this?' " ~(2RT 232-233)~ Gil responded by striking appellant on the head with a stick. ~(2RT 232-233)~ Appellant could not remember exactly what happened after being hit on the head except that he used the machete to defend himself.~(2RT 233-234, 265)~

Appellant was interviewed by police following his arrest. ~(1CT 120-126; 3RT 340-343)~ He admitted he had broken into Gil's vehicle the day before the attack and had taken the machete. ~(1CT 121; 3RT 340-341)~ He also told the police that he was trying to kill Gil with the machete because Gil had killed his father. ~(1CT 122; 3RT 341)~ Appellant could also be heard on Maria's 911 call during the fight saying, "[L]eave me alone, he killed my dad." ~(1CT 109; 2RT 38-39, 43-45)~ Appellant did not remember what he said to the police, and he denied believing that Gil was responsible for his father's death, much less ever trying to kill him for that reason.~(2RT 252, 255, 267, 269)~

## DISCUSSION

### The Trial Court Did Not Abuse Its Discretion in Admitting Evidence of Appellant's Prior Act of Vandalism

#### A. *Relevant background*

Prior to trial, the prosecutor sought to present evidence on the issue of motive of several prior incidents wherein appellant had twice vandalized Gil's vehicle and had broken into the Garcia home the day before the charged offense. ~(2RT 10-11)~ Over defense objection, the trial court ruled that such evidence would be admissible on the issue of motive.~(2RT 11)~

The next day, the trial court heard further argument from the defense in opposition to the prior bad acts evidence. Arguing

that there was no nexus between the uncharged bad acts and the charged crimes, defense counsel asserted that the evidence was not relevant to motive and was therefore inadmissible under Evidence Code[2] section 1101. ~(2RT 23-24)~ The prosecutor responded by advising the court that she intended only to introduce evidence that appellant had vandalized Gil's car a month before he committed the charged acts. Such evidence, she argued, was relevant to the issue of motive because it showed appellant's malicious intent to destroy Gil's property and to later return to kill him. ~(2RT 24)~ The trial court ruled the evidence of the vandalism was admissible on the issue of motive, reasoning that the People were entitled to show "any animus that exist[ed] between the defendant and the victim," and evidence of the vandalism accomplished that.~(2RT 24-25)~

**B. *Evidence of the prior act of vandalism was properly admitted under Evidence Code section 1101 to prove appellant's motive and refute his claim of self-defense***

During trial, Maria testified that one night in February 2017, around 8:30 p.m., appellant came to the house and broke a window in Gil's vehicle by striking it with a rock and a stick. ~(2RT 46, 59-60)~ On that occasion, appellant was yelling obscenities and shouted that he was going kill Gil. ~(2RT 46, 60)~ Gil also testified that about a month before the machete incident, the windows of the truck he used for work were smashed. ~(2RT 159-160)~ Appellant testified that he might have broken the windows of Gil's vehicle, but did not remember doing so.~(2RT 256, 260; 3RT 292)~

---

[2] Undesignated statutory references are to the Evidence Code.

6

Appellant contends that the trial court erred in admitting evidence of this prior uncharged act of vandalism to show motive under section 1101, subdivision (b) because there was an insufficient connection between the vandalism and the charged crimes of attempted murder and assault with a deadly weapon. He also asserts that the vandalism was not sufficiently similar to the charged offenses to support a rational inference of motive or intent.  Finally, he maintains that because the evidence lacked any probative value and was highly prejudicial, it should have been excluded under section 352. ~(AOB 19-26)~ We find no abuse of discretion in the trial court's admission of the vandalism evidence.

Section 1101, subdivision (a) "prohibits admission of evidence of a person's character, including evidence of character in the form of specific instances of uncharged misconduct, to prove the conduct of that person on a specified occasion. Subdivision (b) of section 1101 clarifies, however, that this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character or disposition."  (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393 (*Ewoldt*); *People v. Fuiava* (2012) 53 Cal.4th 622, 667 (*Fuiava*).)

As our Supreme Court has explained, a trial court has discretion to admit evidence of uncharged misconduct after weighing its probative value against the prejudicial effect if such evidence " ' "is logically, naturally, and by reasonable inference relevant to prove some fact at issue, such as motive, intent, preparation or identity." ' "  (*People v. Thompson* (2016) 1 Cal.5th 1043, 1114 (*Thompson*).)  We review the trial court's admission of prior bad acts evidence for abuse of discretion.  (*People v. Cage*

7

(2015) 62 Cal.4th 256, 274 (*Cage*).) An abuse of discretion is "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Carrington* (2009) 47 Cal.4th 145, 195; *People v. Ochoa* (1998) 19 Cal.4th 353, 408 ["[a] court abuses its discretion when its rulings fall 'outside the bounds of reason' "]; *Fuiava, supra*, 53 Cal.4th at p. 663.)

Evidence of uncharged misconduct may be relevant to establish a defendant's motive in committing the charged offense. (*Thompson, supra*, 1 Cal.5th at p. 1114; *Ewoldt, supra*, 7 Cal.4th at p. 402, fn. 6.) Motive "is defined as a '[c]ause or reason that moves the will and induces the action[,]' '[a]n inducement, or that which leads or tempts the mind to indulge a criminal act.' " (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1017.) "Although motive is normally not an element of any crime that the prosecutor must prove, 'evidence of motive makes the crime understandable and renders the inferences regarding defendant's intent more reasonable.' " (*People v. Riccardi* (2012) 54 Cal.4th 758, 815.) Further, " '[p]roof of the presence of motive is material as evidence tending to refute or support the presumption of innocence.' " (*Scheer*, at p. 1017.)

Motive " 'may be established by evidence of "prior dissimilar crimes." ' " (*Thompson, supra*, 1 Cal.5th at p. 1114; *Cage, supra*, 62 Cal.4th at p. 274.) " 'The existence of a motive requires a nexus between the prior crime and the current one, but such linkage is not dependent on comparison and weighing of the similar and dissimilar characteristics of the past and present crimes.' " (*Thompson*, at p. 1115; see *People v. Daveggio and Michaud* (2018) 4 Cal.5th 790, 827 [" 'least degree of similarity

8

(between the uncharged act and the charged offense) is required in order to prove intent' "].)

The nexus required between the uncharged offense and the charged crime does not necessarily mean that the former provides a clear reason for the commission of the latter. Rather, in a second category of prior bad acts evidence admissible for motive, " 'the uncharged act evidences the existence of a motive, but the act does not supply the motive. . . . [T]he motive is the cause, and both the charged and uncharged acts are effects. *Both crimes are explainable as a result of the same motive.*' " (*People v. Spector* (2011) 194 Cal.App.4th 1335, 1381; see *People v. Davis* (2009) 46 Cal.4th 539, 604 [evidence of two prior sexual assaults on children involving bondage tended to show defendant had motive for sexually assaulting murder victim]; *People v. Demetrulias* (2006) 39 Cal.4th 1, 15 [evidence of prior assault and robbery of different victim tended to show defendant had motive to rob victim killed in current case]; *People v. San Nicolas* (2004) 34 Cal.4th 614, 668 [evidence of defendant's threats and prior assaults on wife admissible on issues of defendant's motive and state of mind in trial for wife's murder].)

Here, evidence of the uncharged act of vandalism was admissible because it showed the existence of a motive to cause Gil harm. It was the prosecution's theory of guilt in this case that appellant was motivated to take revenge against Gil based on his belief that Gil was responsible for the death of appellant's father. ~(3RT 393)~ The same anger that drove appellant to vandalize Gil's vehicle and threaten to kill him drove him to attack Gil with a machete a month later. The logical connection between the uncharged act and the charged offenses was not

9

their similarity, but the fact that they all shared the same impetus.

Further, appellant claimed that he used the machete only in self-defense; it was the prosecution's burden to prove appellant did not act in self-defense. (*People v. Rios* (2000) 23 Cal.4th 450, 461–462 [prosecution must disprove self-defense to prove malice for murder]; *People v. Saavedra* (2007) 156 Cal.App.4th 561, 571.) The evidence of the vandalism, which showed appellant's anger and hostility toward Gil, logically tended to prove appellant's motive and intent to kill, thereby negating his claim of self-defense. The requisite direct logical nexus between the uncharged act and the charged offenses thus satisfied, the trial court properly admitted the prior acts evidence under section 1101, subdivision (b).

Finally, the probative value of the prior acts evidence was not "substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury," thus requiring exclusion under section 352. (*People v. Davis*, *supra*, 46 Cal.4th at p. 602.) To the contrary, appellant's vandalism of Gil's vehicle was clearly far less inflammatory than appellant's attack on Gil with a machete. The prior act was also recent, having occurred only one month before the machete attack, and the testimony about it consumed very little time at trial. ~(2RT 46, 59-60, 159-160, 256, 260; 3RT 292)~ Moreover, as discussed above, the evidence was directly relevant to the issues of motive, intent, and appellant's claim of self-defense. The trial court did not abuse its discretion in admitting the evidence under section 352. (See *People v. Whisenhunt* (2008) 44 Cal.4th 174, 205.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.