Filed  2/28/25  P. v. Kankel CA1/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL CRAIG KANKEL,<br><br>　　　Defendant and Appellant. | A167612<br><br>(San Mateo County<br>Super. Ct. No. 22-SF-004442-A) |

**THE COURT\*:**

It is ordered that the unpublished opinion filed herein on January 30, 2025, be modified as follows:

On page 16, the second sentence of the first full paragraph is modified to read:

Some offenses include a physical altercation in a hotel room, physical altercation while in the county jail, causing damage, and a couple of instances of driving while under the influence of drugs and/or alcohol, resulting in his colliding with either parked cars or other vehicles.

On page 18, the penultimate sentence of the first full paragraph is deleted:  "While in custody in August 2022, Kankel punched a victim approximately eight times before a correctional officer intervened."

---

\* Tucher, P. J., Petrou, J. and Rodríguez, J. participated in the decision.

1

The petition for rehearing filed February 14, 2025, is denied.  There is no change in the judgment.


Dated: <u>2/28/2025</u>          <u>Tucher, P.J.</u>               , P. J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>SAMUEL CRAIG KANKEL,<br><br>     Defendant and Appellant. | A167612<br><br>(San Mateo County<br>Super. Ct. No. 22-SF-004442-A) |

Samuel Craig Kankel argued with John Doe over a small metal container containing drugs.  The two fought, and Kankel stabbed Doe with a knife several times.  A jury found Kankel guilty of assault with a deadly weapon and found true a great bodily injury enhancement.  (Pen. Code, §§ 245, subd. (a)(1), 12022.7, subd. (a); undesignated statutory references are to this code.)  On appeal, Kankel argues we must reverse the judgment due to various trial court errors, including the erroneous admission of third party threats against Doe; misleading jury instructions regarding self-defense; omission of justifiable homicide instructions; and refusal to strike the great bodily injury enhancement.  We affirm.

**BACKGROUND**

One night in April 2022, Doe went to an acquaintance's house to obtain synthetic urine to use for a scheduled drug test.  When there, Doe encountered Kankel.  He offered Doe some drugs, which Doe declined.

1

Kankel pulled a small, metal container containing drugs from his pocket. Doe recognized the container and believed it belonged to him — he had lost it a few days prior. Doe accused Kankel of stealing the container and snatched it out of his hand.

Kankel pulled out a knife. They continued to argue about the container. Doe saw Kankel's arm moving toward him, and he shielded himself with his hands. Kankel, on the other hand, believed Doe grabbed him and tried to shake him off balance. Although Doe was able to block several of Kankel's attempts to stab him, Doe ultimately sustained several stab wounds to his hand, wrist, chest, and lung. He tried to back away from Kankel, but Kankel kept pursuing him. Doe yelled, " 'Help, I'm getting stabbed,' " at which point Kankel said, " 'Oh, stop attacking me, dude. I'm defending myself.' " Doe managed to get into his car and drive himself to the hospital.

The district attorney charged Kankel with attempted murder (§§ 187, subd. (a), 664), with enhancements for deadly weapon use and great bodily injury (§§ 12022, subd. (b)(1), 12022.7, subd. (a)). In the alternative, the information charged him with assault with a deadly weapon, and a great bodily injury enhancement. (§§ 245, subd. (a)(1), 12022.7, subd. (a).) A jury found him guilty of assault with a deadly weapon and found true the great bodily injury enhancement allegation. The trial court dismissed the attempted murder charge and related enhancements after the jury failed to reach a unanimous verdict on that count. The court also denied Kankel's motion to strike the great bodily injury enhancement. It suspended imposition of a sentence and placed Kankel on probation for three years.

## DISCUSSION

### I.

Kankel contends the trial court erred by allowing Doe to describe numerous threats he received to prevent him from testifying. According to Kankel, those statements were irrelevant. He further contends the court erred in providing a partial, misleading limiting instruction regarding this testimony rather than telling the jury to consider the evidence only to evaluate Doe's credibility and not the truth of the threats or as evidence of guilt. These arguments are forfeited.

During trial, Doe testified that he was arrested and placed in custody for an unrelated offense. While there, various people — such as Kankel's family members or other inmates — tried to intimidate him and dissuade him from testifying against Kankel. Doe also testified that his girlfriend and girlfriend's children were threatened in an attempt to prevent him from "snitching."

Kankel's counsel objected that these statements constituted hearsay and were vague as to who was making the threats. In response, the prosecutor explained the testimony was being offered to demonstrate the statements' effect on Doe and his lack of bias in testifying. The trial court agreed and instructed the jury, "the evidence of whatever people said to [Doe] that he's testifying to, the purpose of that evidence and what you can use it for is whatever effect it may have had if any on [Doe]." The court clarified, "[s]o that's what that evidence is being offered for to go to [Doe's] mental state and actions thereafter, if any, and whatever evidence or explanation along those lines given." Later, the court, as requested by Kankel, instructed the jury with CALCRIM No. 303, the general limited purpose evidence instruction providing that certain evidence admitted for a limited purpose

3

could only be considered for that purpose and no other. Kankel did not object or request any modification to these instructions.

Kankel's hearsay and vagueness objection fails to preserve a relevance argument on appeal. (*People v. Jackson* (2016) 1 Cal.5th 269, 328 [requiring specific and timely objection on the ground asserted on appeal]; *People v. Partida* (2005) 37 Cal.4th 428, 434; Evid. Code, § 353, subd. (a).) Kankel's failure to object below similarly forfeited his related argument that the trial court should have excluded the testimony under Evidence Code section 352 because it was irrelevant, and any probative value was outweighed by its prejudicial effect. (*People v. Jones* (2012) 54 Cal.4th 1, 61 [requiring specific objection under Evid. Code, § 352 to preserve argument on appeal].) We do not consider these arguments raised for the first time on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue"].)

Kankel also forfeited his right to challenge the trial court's limiting instruction as "too general or incomplete" because he failed to request "appropriate clarifying or amplifying language." (*People v. Lang* (1989) 49 Cal.3d 991, 1024.) While the forfeiture rule does not apply if the instructions are incorrect or an error affected the defendant's substantial rights, those are not the circumstances here. (*People v. Mason* (2013) 218 Cal.App.4th 818, 823; § 1259.) Despite Kankel's attempts to frame his argument as a challenge to the correctness of the limiting instruction, he fails to identify any actual error. Rather, he argues the instructions were incomplete and misleading because they failed to expressly limit the jury's consideration of the testimony to evaluating Doe's credibility.

This argument views the record too narrowly. Determining whether instructions correctly state the law requires considering the instructions as a whole and assumes jurors understood, correlated, and followed all of the instructions given. (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088; *People v. Sanchez* (2001) 26 Cal.4th 834, 852.) After accepting the prosecutor's explanation that the third party threats were being used to demonstrate their effect on Doe and his lack of bias, the trial court told the jury it could consider that testimony for the effect the threats had on Doe. Before closing arguments, the court also provided the jury with CALCRIM No. 303, reminding the jury of the limited purpose of the third party threats evidence: "During the trial certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other." The instructions, as a whole, *did* prohibit the jury from considering the testimony for purposes other than the one identified by the court. (*Ramos*, at p. 1088; compare with *People v. Baker* (1954) 42 Cal.2d 550, 573 [instructions incorrect where court omitted entire element in intoxication defense instruction].)

To the extent Kankel argues his counsel's assistance was ineffective because he did not object to the testimony or instructions, Kankel fails to satisfy the heavy burden of prevailing on that claim on appeal. (*People v. Mickel* (2016) 2 Cal.5th 181, 198; *People v. Thompson* (2010) 49 Cal.4th 79, 122 ["rarely will an appellate record establish ineffective assistance of counsel"].) Criminal defendants have the right to effective assistance of counsel. (*Strickland v. Washington* (1984) 466 U.S. 668, 684–686; *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) To establish counsel was ineffective, the defendant must demonstrate counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and that

5

deficiency was prejudicial — a reasonable probability that but for the counsel's failure, he would have obtained a more favorable outcome. (*Ledesma*, at pp. 218–219; *People v. Lopez* (2008) 42 Cal.4th 960, 966.) We presume counsel's performance fell within the broad range of reasonableness. (*People v. Lewis* (2001) 25 Cal.4th 610, 674.) We reverse a conviction only if the record affirmatively discloses counsel had no tactical purpose for the omission, counsel was asked for a reason but failed to provide one, or there is no satisfactory explanation for the omission. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)

We reject Kankel's argument there was simply no tactical reason for forgoing an objection to Doe's testimony on relevance grounds or to the limiting instruction. Kankel's counsel could have reasonably concluded the statements Doe relayed *were* relevant. Indeed, in response to questions regarding whether people in jail affected his willingness to testify against Kankel, Doe conveyed several incidents of Kankel's family members and friends threatening to physically assault him. He responded affirmatively to the prosecutor's question regarding whether people intimidated him. "Evidence that a witness is afraid to testify or fears retaliation for testifying is relevant to the credibility of that witness and is therefore admissible." (*People v. Burgener* (2003) 29 Cal.4th 833, 869; Evid. Code, § 780.) There " 'is no requirement to show threats against the witness were made by the defendant personally or the witness's fear of retaliation is "directly linked" to the defendant,' " as Kankel insists. (*People v. McKinnon* (2011) 52 Cal.4th 610, 668.) It is the existence of the threats rather than their source "that is relevant to the witness's credibility." (*Burgener*, at p. 870.) Counsel was not ineffective by failing to object to the admission of evidence where "there was no sound legal basis for objection." (*People v. Cudjo* (1993) 6 Cal.4th 585,

6

616.)  The same applies for the limiting instruction.  Kankel's counsel could have reasonably concluded the instructions provided were correct, as discussed above.  Counsel was "not ineffective for failing to make frivolous or futile motions."  (*People v. Thompson, supra,* 49 Cal.4th at p. 122.)

## II.

Kankel asserts various instructional errors and prosecutorial misconduct related to CALCRIM No. 3470, the self-defense instruction provided to the jury.  Even though he did not object to, or request an amplification or clarification of, the instructions — ordinarily thus forfeiting these arguments on appeal — we address his arguments to forestall an ineffective assistance of counsel claim.  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 906; *People v. Williams* (1998) 17 Cal.4th 148, 161–162, fn. 6.)  After independently reviewing whether the instruction correctly states the law and assessing the "reasonable likelihood that the jury misunderstood or misapplied the instruction in a manner that violates the Constitution," we disagree with Kankel.  (*Covarrubias,* at p. 906; *People v. Posey* (2004) 32 Cal.4th 193, 218.)

First, Kankel argues CALCRIM No. 3470 incorrectly conveyed that he bore the burden of demonstrating self-defense.  Not so.  The instruction explains a defendant is not guilty of specific offenses "if he used force against the other person in lawful self-defense."  It recites the elements of self-defense — a reasonable belief he was in imminent danger of bodily injury, that the immediate use of force was necessary to defend against that danger, and he used no more force than was reasonably necessary to defend against that danger.  At the end of the instruction, it expressly states the "People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense.  If the People have not met this burden, you

7

must find the defendant not guilty of the crimes." This correctly states the law. (*People v. Saavedra* (2007) 156 Cal.App.4th 561, 571 ["the prosecution has the burden to prove a defendant did not act in self-defense, because self-defense negates an element of the offense"].)

Articulating the prosecution's burden at the end does not render the instruction misleading, contrary to Kankel's assertion. This argument ignores the assumption " ' "that the jurors [were] intelligent persons and capable of understanding and correlating all jury instructions." ' " (*People v. Ramos*, *supra*, 163 Cal.App.4th at p. 1088.) Other instructions given here — CALCRIM No. 875, instructing the jury the prosecution must prove Kankel did not act in self-defense before it could find him guilty of assault with a deadly weapon, and CALCRIM No. 604, instructing the jury regarding attempted voluntary manslaughter that the prosecution has the burden of proving beyond a reasonable doubt that Kankel was not acting in imperfect self-defense — further reinforced that the prosecution, not Kankel, had to demonstrate the inapplicability of self-defense. Considering instructions as a whole rather than in isolation, there is no reasonable likelihood the jury believed Kankel had to demonstrate he acted in self-defense to absolve himself of liability for assault with a deadly weapon. (*Ramos*, at p. 1088.)

Next, Kankel argues the trial court erred by failing to modify CALCRIM No. 3470 to require unanimity — that is, that finding him guilty of assault required the jury to unanimously agree as to which specific self-defense element the prosecution disproved. This argument misapprehends the law governing the right to juror unanimity. Defendants have the right to a unanimous jury verdict. (*People v. Russo* (2001) 25 Cal.4th 1124, 1132; Cal. Const., art. I, § 16.) In addition, "the jury must agree unanimously the defendant is guilty of a *specific* crime." (*Russo*, at p. 1132.) Thus, if the

8

evidence suggests more than one unlawful act, "the prosecution must elect among the crimes," or the court must instruct the jurors to unanimously agree on the act that constituted the crime. (*Ibid*.) This prevents the jury from combining multiple offenses, " 'no one of which has been proved beyond a reasonable doubt,' " to conclude a defendant committed an act sufficient for a conviction. (*Ibid*.) But there is no need for the jury to unanimously agree on the *theory* upon which the defendant is guilty, such as how the crime was committed or the defendant's precise role in the crime. (*Ibid*.)

We reject Kankel's assertion — unsupported by citation to case law — that the jury must agree upon the self-defense elements the prosecution negated to disprove that defense. Kankel did not offer any other defense to his charged offenses. (*People v. Jennings* (2010) 50 Cal.4th 616, 679 ["no need for a unanimity instruction if the defendant offers the same defense or defenses to the various acts constituting the charged crime"].) There was only one discrete act — Kankel stabbing Doe multiple times. The jury need not have agreed whether, for example, Kankel used excessive force or whether he was in imminent peril. "[W]here the evidence shows only a single discrete crime but leaves room for disagreement as to exactly how that crime was committed or what the defendant's precise role was, the jury need not unanimously agree on the basis or," the theory of defendant's liability. (*People v. Russo*, *supra*, 25 Cal.4th at p. 1132.) Nothing requires the jury to unanimously agree on "subsidiary factual issues, such as specific details of the act." (*People v. McDaniel* (2021) 12 Cal.5th 97, 145; *People v. Mickle* (1991) 54 Cal.3d 140, 178 ["the unanimity rule does not extend to the minute details of how a single, agreed-upon act was committed"].)

Kankel nonetheless contends the trial court should have sua sponte provided the jury an instruction comparable to CALCRIM No. 2140, the

9

pattern instructions articulating the felony hit-and-run elements. That instruction articulates five different duties the defendant failed to perform after being involved in a car accident causing injury to someone else. At the end, it admonishes the jury it "may not find the defendant guilty unless all of you agree that the People have proved that the defendant failed to perform at least one of the required duties. You must all agree on which duty the defendant failed to perform." (*Ibid.*) The unanimity instruction in that context may be appropriate — felony hit-and-run can be committed by a defendant's failure to perform one of several different discrete duties. In those circumstances, "there is a risk the jury may divide on two discrete crimes and not agree on any particular crime," thus unanimity instruction should be given. (*People v. Russo*, *supra*, 25 Cal.4th at p. 1135.) Here, however, there is only one discrete act, i.e., Kankel stabbing Doe. The jury was entitled to decide whether that act was excessive or was not in response to an imminent threat of bodily injury. A unanimity instruction was unnecessary, and Kankel cites no opinion holding to the contrary.

Finally, Kankel argues the prosecutor engaged in misconduct by suggesting several times during his opening statement and closing argument that the defendant had the burden of establishing self-defense. The prosecutor stated during his opening statement: "when you hear [the defendant's] recorded statement, he's going to talk about the fact that he says quote, unquote, self-defense. . . .[Y]ou will hear the legal definition and what the requirements are in order to assert that as a defense." During closing argument, the prosecutor explained the self-defense jury instruction as, "It may be a defense if you find that the elements are met. If they're not [met], then it is not." Additionally, the prosecutor argued, "It is not a self-defense case. It never has been, never was, because the amount of force that was

10

used and the deadly weapon proved to you that it wasn't. The defendant was not justified[.]"

None of these statements constitute misconduct.  A prosecutor's comments violate the federal Constitution "when they constitute a pattern of conduct so egregious that it infects the trial with such unfairness as to make the conviction a denial of due process." (*People v. Cortez* (2016) 63 Cal.4th 101, 130.)  Comments failing this test nonetheless violate state law if they "involve . . . use of deceptive or reprehensible methods to attempt to persuade" the jury.  (*Ibid.*)  It is unnecessary to establish the prosecutor acted in bad faith to demonstrate misconduct.  (*Ibid.*)  Rather, viewing the whole argument and jury instructions in context, the defendant must show there must be a reasonable likelihood the jury understood or applied the comments in an improper manner.  (*Ibid.*)

While it is improper for the prosecutor to misstate the law or reduce its burden of proof, there is no misstatement here.  (*People v. Boyette* (2002) 29 Cal.4th 381, 435.)  The prosecutor's statements — that Kankel will argue he acted in self-defense and there are several requirements to assert the defense — and — that self-defense may not apply if the elements are not met — were nothing more than a fair comment on the law.  (*People v. Saavedra, supra*, 156 Cal.App.4th at p. 570 [defendant must only raise reasonable doubt regarding a defense negating element of a crime, and prosecution must show nonexistence of the defense]; *People v. Krebs* (2019) 8 Cal.5th 265, 342 [authorizing prosecutorial attacks on the defense case].)  Indeed, the prosecutor continued, explaining Kankel did not act in self-defense because he lacked a reasonable belief that lethal force was necessary. At no time did the prosecutor say Kankel had to prove self-defense.  (*People v. Bradford* (1997) 15 Cal.4th 1229, 1340 [distinguishing to permissible

11

comments that defendant has not produced any evidence and impermissible comments that defendant had a duty or burden to produce evidence].) Moreover, in context, the prosecutor's statements cannot be reasonably understood to shift the burden of proving self-defense to Kankel. The trial court repeatedly instructed the jury that the prosecution must demonstrate Kankel did not act in self-defense, as indicated in CALCRIM Nos. 875 and 3470. (*People v. Cowan* (2017) 8 Cal.App.5th 1152, 1159; *People v. Cortez*, *supra*, 63 Cal.4th at p. 130.)

The prosecutor's closing argument — that this case is not about self-defense because "the amount of force that was used and the deadly weapon proved to you that it wasn't" — similarly constitutes an authorized attack on the defense case. (*People v. Krebs*, *supra*, 8 Cal.5th at p. 342.) Rather, he stated, "I will explain to you why self-defense doesn't apply right now," reiterating it was his burden to disprove the applicability of self-defense before summarizing evidence that supported the prosecution's burden. As we do not lightly infer the jury drew the most damaging meaning from the prosecutor's statements, it is not reasonably likely the jury understood the prosecutor's statements to shift its burden to Kankel. (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

## III.

Kankel contends the trial court failed to sua sponte supplement the jury instructions with CALCRIM No. 505,[1] describing justifiable use of deadly

---

[1] CALCRIM No. 505 instructs, in relevant part:

"The defendant is not guilty of (murder/ [or] manslaughter/attempted murder/ [or] attempted voluntary manslaughter) if (he/she) was justified in (killing/attempting to kill)

force in self-defense or defense of another. According to Kankel, the court should have presented a modified version of CALCRIM No. 505, stating the use of deadly force is justifiable if the defendant was in imminent danger of being a victim of robbery under circumstances in which he reasonably believed he would suffer great bodily injury or death. He argues this instruction was necessary to inform the jury he had the right to use lethal force to repel Doe's alleged robbery — i.e., aggressively and angrily snatching the small metal box out of his hand. Leaving aside Kankel's failure to request the instruction or intended modifications, thus forfeiting the argument on appeal, his argument nonetheless fails. (*People v. Covarrubias*, *supra*, 1 Cal.5th at p. 906.)

Courts must instruct on general legal principles — "those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case" — on issues raised by the evidence. (*People v. St. Martin* (1970) 1 Cal.3d 524, 531; *People v. Souza*

---

someone in (self-defense/ [or] defense of another). The defendant acted in lawful (self-defense/ [or] defense of another) if:

1. The defendant reasonably believed that (he/she/ [or] someone else/ [or] _____ <*insert name or description of third party*>) was in imminent danger of being killed or suffering great bodily injury [or was in imminent danger of being a victim of (_____ <*insert inherently forcible and atrocious crime such as rape or mayhem>/<insert noninherently forcible and atrocious crime such as robbery*> under circumstances in which (he/she) reasonably believed that (he/she) would suffer great bodily injury or death)];

2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger;

AND

3. The defendant used no more force than was reasonably necessary to defend against that danger."

(2012) 54 Cal.4th 90, 115.) This duty arises sua sponte " 'if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense *and* the defense is not inconsistent with the defendant's theory of the case.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 157.) But we need not resolve whether the trial court had a duty to instruct the jury with a modified version of CALCRIM No. 505 because its failure to do so was harmless under either federal or state standards.[2] (*People v. Watson* (1956) 46 Cal.2d 818, 836 [state standard for prejudicial error is whether "it is reasonably probable that a result more favorable would have been reached"]; *Chapman v. California* (1967) 386 U.S. 18, 24 [federal standard of error is harmless beyond a reasonable doubt].)

For self-defense, a person must use reasonable force to resist an imminent "unlawful application of force or unlawful touching." (*People v. Clark* (2011) 201 Cal.App.4th 235, 250.) The authorized use of force is no more than reasonably necessary to defend against the danger. (*Ibid.*; *People v. Hardin* (2000) 85 Cal.App.4th 625, 629 [use of force must be proportionate to the threat since an excessive use of force destroys a self-defense justification].) The jury heard Kankel's description of the stabbing — that Doe saw a metal container he believed was his and swung his arms aggressively at Kankel. Although Kankel claimed he only "poked" Doe twice, "trying to defend" himself, evidence established Doe suffered multiple life-

---

[2] We question Kankel's assertion that robbery per se justifies the use of lethal force, thus requiring CALCRIM No. 505 justifiable homicide instruction. The "touchstone for self-defense remains the reasonable belief of the danger of great bodily injury or death, not the threat of a robbery in and of itself." (*People v. Morales* (2021) 69 Cal.App.5th 978, 992.) Robbery "cannot trigger the right to use deadly force in self-defense unless the circumstances of the robbery gave rise to a reasonable belief that the victim would suffer great bodily injury or death." (*Ibid.*)

threatening stab wounds puncturing his thorax and chest, resulting in blood inside his lungs, and stab wounds to his hands.

As discussed above, the trial court provided the jury with CALCRIM No. 3470, the general self-defense instruction in nonhomicide cases justifying assault. (*People v. Waxlax* (2021) 72 Cal.App.5th 579, 591.) The jury nonetheless convicted Kankel of assault, indicating it rejected his claims that he used force because of a reasonable fear Doe would inflict bodily injury or unlawful touching on him. (*People v. Enriquez* (1977) 19 Cal.3d 221, 228 ["an assault [with fists] does not justify the use of a deadly weapon in self-defense"], disapproved on another ground in *People v. Cromer* (2001) 24 Cal.4th 889, 901, fn. 3.) The only difference between CALCRIM Nos. 505 and 3470 is "the type of the threat the defendant believed they faced" — "danger of being killed" or " 'great bodily harm' " for homicide or attempted homicide, and " 'bodily injury' " or " 'unlawful touching' " for assault. (*Waxlax*, at pp. 591–592.) Including CALCRIM No. 505 — that Kankel "could have acted in self-defense if he had a fear of great bodily injury or death due to robbery" — a higher level of threat and greater harm than the elements required for self-defense against assault — "would not have changed the jury's finding on this point." (*People v. Morales*, *supra*, 69 Cal.App.5th at p. 994.)

## IV.

Kankel argues the trial court abused its discretion in failing to strike the great bodily injury enhancement under section 1385. Specifically, he argues his current offense is connected to mental illness and prior victimization or childhood trauma, both mitigating circumstances weighing greatly in favor of dismissing the enhancement. We conclude the court's decision was not arbitrary, capricious, or exercised in a patently absurd

manner, and its factual findings were supported by substantial evidence. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 [abuse of discretion standard of review for decision declining to dismiss enhancement].)

A probation report conveyed Kankel's criminal history, noting he had multiple police contacts and allegedly committed crimes between March 2020 and August 2022. Some offenses include a physical altercation in a hotel room, physical altercation while in a correctional facility, causing damage, and a couple of instances of driving while under the influence of drugs and/or alcohol, resulting in his colliding with either parked cars or other vehicles. He also had a long history of substance use, including heroin and methamphetamine by the age of 14. Several years later, he began using fentanyl. On the day he was arrested for assaulting Doe, Kankel had consumed marijuana, methamphetamine, fentanyl, sedatives, and alcohol. In a probation officer's recommendation report, Kankel stated "the trauma that he experienced throughout his childhood led to addiction at an early age." Kankel even reported "he would have never committed the [2022 assault on Doe] if it were not for his substance abuse issues."

The trauma Kankel suffered included his brother hitting him as punishment for disobedience. By the time Kankel was 13 years old, his brother's violence escalated, kicking Kankel and hitting him with objects. A psychologist diagnosed Kankel with post-traumatic stress disorder, major depressive disorder, and panic disorder in addition to several severe substance use diagnoses. Given Kankel's history of physical assaults as a child and assault by his brother a few years before the assault on Doe, the psychologist noted it was reasonable to assume Kankel was fearful when verbally confronted by Doe. For that reason, the psychologist opined

16

Kankel's mental health condition played a mitigating role in the commission of the 2022 assault on Doe.

At the sentencing hearing, the trial court considered Kankel's childhood trauma and mental health issues but rejected the psychologist's opinion they were connected to the assault on Doe. Rather, the court explained, Kankel's violent behavior appeared to be caused by substance abuse. The court continued, noting that even if they were mitigating circumstances, dismissing the great bodily injury enhancement would endanger public safety. Doing so, according to the court, would eliminate the possibility of incarcerating Kankel for three more years, inhibiting his access to drugs and alcohol that resulted in violent offenses. For those reasons and in addition to the impact on Doe, the court further concluded that dismissing the enhancement was not in the interests of justice.

Courts must dismiss an enhancement if it furthers the interests of justice, unless prohibited by any initiative statute. (§ 1385, subd. (c)(1).) In making this determination, courts must consider and afford great weight to evidence offered by a defendant proving the presence of certain enumerated mitigating circumstances. (*Id.* subd. (c)(2).) Relevant here, mitigating circumstances include the current offense being connected to mental illness or prior victimization or childhood trauma. (*Id.* subd. (c)(2)(D)–(E).) Those circumstances must substantially contribute to the defendant's involvement in the commission of the offense. (*Id.* subd. (c)(5)– (6).) Proof that one or more of these circumstances is present weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety — a likelihood dismissal would result in physical injury or other serious danger to others. (*Id.* subd. (c)(2).) Absent a finding that dismissal endangers public safety, "a court

17

retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)

On this record, we cannot say the trial court's determination that dismissing Kankel's great bodily injury enhancement would endanger public safety was irrational or arbitrary. (*People v. Mendoza, supra*, 88 Cal.App.5th at p. 298.) The court considered Kankel's criminal misconduct, determining his violent behavior had been based on his repeated substance abuse. But dismissing the enhancement, according to the court, would extinguish the possibility of keeping Kankel away from drugs and alcohol, which has caused him to be violent, thus endangering public safety. Indeed, Kankel acknowledged stabbing Doe was the result of his substance abuse issues. Within a two-year span, he repeatedly committed various offenses. In April 2020, he drove a vehicle while under the influence and collided with multiple parked cars. This happened again in 2021, resulting in Kankel colliding with another vehicle. In another incident in 2021, Kankel's father requested police remove Kankel after he punched through his brother's door. While in custody in August 2022, Kankel punched a victim approximately eight times before a correctional officer intervened. The record supports the court's factual findings. (*Ibid.*)

Kankel's arguments do not persuade us otherwise. First, he insists the trial court failed to give proper weight to the mitigating factors. But the court expressly determined that dismissing the enhancement would endanger public safety. "[C]onsideration of the mitigating factors in section 1385(c)(2) is not required if the court finds that dismissal of the enhancement would endanger public safety . . . ." (*People v. Mendoza, supra*, 88 Cal.App.5th at p. 297; *People v. Walker, supra*, 16 Cal.5th at p. 1033 [" 'it is hard to see how

18

dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)"].)

Second, Kankel argues the trial court's statements made when determining whether to impose probation — that it was unlikely Kankel would be a danger if not imprisoned — undermine the court's enhancement determination. Denying a request to strike an enhancement, however, is distinct from the decision to stay " 'the execution of the sentence as part of a grant of probation.' " (*People v. Aubrey* (1998) 65 Cal.App.4th 279, 284.) "Striking an enhancement is tantamount to dismissing it." (*Ibid*.) " ' "A stay is a temporary suspension of a procedure in a case until the happening of a defined contingency." ' " (*Ibid*.) When staying a sentence to impose probation, the "term is imposed; and if the defendant violates probation, he must serve that sentence." (*Ibid*.) For that reason, the court noted it did not want to strike the great bodily injury enhancement because doing so would "extinguish the potential to incarcerate [Kankel] for three more years, which would keep him away from society and drugs and potentially alcohol, which has caused him to be violent on multiple occasions." This was simply a classic case of imposing a felony prison sentence but staying the execution for a grant of probation. (*Ibid*.)

In sum, the trial court did not abuse its discretion denying Kankel's motion to strike his enhancement.

## DISPOSITION

The judgment is affirmed.

19

_____

RODRÍGUEZ, J.


WE CONCUR:


_____

TUCHER, P. J.


_____

PETROU, J.


A167612; *People v. Kankel*

20